UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JACQULYN WOOD**, *an individual*,

    Plaintiff,

vs.

**NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK**, *a corporation,*

    Defendant.

Case No.  20-cv
Hon.
Mag.

_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emarzottotaylor@debgordonlaw.com
sthomas@debgordonlaw.com
msavage@debgordonlaw.com
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jacqulyn Wood, by and through her attorneys Deborah Gordon Law, complains against Defendant as follows:

1

## JURISDICTION AND PARTIES

1. This is an action for gender discrimination based on failure to promote, retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et. seq*.

2. Plaintiff Jacqulyn Wood ("Plaintiff") is a resident of Michigan and resides within the Eastern District of Michigan.

3. Defendant National Passenger Railroad Corporation, doing business as Amtrak ("Amtrak"), is a for-profit corporation incorporated in Washington D.C., with its principal place of business in Washington D.C.

4. Amtrak conducts business in the Eastern District, Southern Division, of Michigan and the events underlying this Complaint occurred in the Eastern District, Southern Division, of Michigan.

5. The amount in controversy in this action exceeds $75,000.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

## BACKGROUND FACTS

7. Plaintiff was hired by Amtrak as an assistant train conductor in April 2010.

8.      Amtrak is a passenger railroad service that provides medium and long-distance intercity service in the contiguous United States and to nine Canadian cities.

9.      Amtrak is part of a historically male dominated industry. In 2020, female employees on the "agreement" side of the company (the operation of trains) represented only 18% of Amtrak employees, down from 21% in 2016. In contrast, the total U.S. labor force is approximately 47% female.

10.     Upon Plaintiff being hired, there was no restroom or changing facility (locker-room) for women; Plaintiff was forced to use the male facilities.

11.     Throughout her employment Plaintiff was subjected to a hostile environment. Many male employees openly used derogatory, sexual names to describe women and stated that women were not capable or were stupid. One male co-worker complained to Plaintiff that she had taken a job from a man. Another male co-worker told Plaintiff that women had to "sleep their way to the top" in order to move up. Supervision was aware of this language.

12.     Beginning in 2011, Plaintiff has repeatedly sought promotions for which she is highly qualified.

13.     Between late 2011 and early 2020, Plaintiff submitted at least nine applications for open Passenger Engineer positions.

14.     Plaintiff is well qualified to become a Passenger Engineer.

15. There are very few female Passenger Engineers employed by Amtrack; the significant majority are males who have been promoted internally.

16. The Passenger Engineer position would have been a promotion for Plaintiff.

17. During the same time period, Plaintiff also applied for various openings for Trainmasters and Lead Technical Trainers for which she was well qualified.

18. Most of Plaintiff's applications and requests to be interviewed have been ignored or denied

19. Instead, Amtrak repeatedly offered interviews and ultimately promotions for the positions described above to Plaintiff's more junior, less-qualified, male co-workers.

20. In 2015, a Passenger Engineer position opened up in Pontiac, Michigan. Plaintiff applied.

21. Plaintiff's supervisor Charlie Zak and Ethan Like, an Engineer with hiring authority, decided not to hold interviews for the position and to instead fast track Plaintiff's junior, male assistant conductor into the position.

22. One supervisor told Plaintiff that she would never be an engineer and that he thought a male, mechanical foreman would be more qualified than her to be a conductor, the position Plaintiff had held for nine years already.

4

23. An experienced mechanical foreman is objectively less qualified to be an engineer than an experienced conductor.

24. Due to a work-related injury, Plaintiff was on medical leave from March 2015 to March 2017.

25. In November 2017, an Amtrack Engineer told Plaintiff he wanted a sexual relationship with her. When she declined, he threatened her in the work parking lot and brandished his gun.

26. Around June of 2018, Plaintiff needed to complete a "road test" with her supervisor Michael Amstutz to renew a certification.

27. Amstutz repeatedly scheduled the road test with Plaintiff and either failed to show up or rescheduled the test.

28. After repeated cancellations, Amstutz asked Plaintiff to take the test at his hotel in the middle of the night, telling her that she could take the test in the lobby.

29. Plaintiff acquiesced, anxious to complete her recertification after repeated delays, and met Amstutz at his hotel around 12:30 a.m., following her shift.

30. Amstutz insisted that Plaintiff take the test in his hotel room. Plaintiff ended up taking the test on the floor of Amstutz's hotel room while he laid in bed, asking her questions about her relationship status with men.

31. Throughout the first half of 2018, conductor Adam Williams repeatedly harassed Plaintiff with comments concerning rape, stating that rape victims should stop reporting men because they were ruining men's lives. Plaintiff reported this to management, but no action was taken.

32. In June 2018, Plaintiff applied for an open Passenger Engineer position in Kansas City. The hiring manager, Carey Lacey, reminded Plaintiff of his authority over hiring and suggested that Plaintiff have dinner with him and stay in his hotel room in Kansas City so he could help her "prepare" for the interview.

33. Plaintiff declined Lacey's inappropriate requests. She told Lacey that she would prefer to do a phone interview if possible because she couldn't afford to miss work. Lacey reiterated his requests, which she again declined.

34. Plaintiff contacted Amtrak Recruiting Coordinator Sheila Oman who confirmed that Amtrak typically conducted phone interviews for current employees. Plaintiff again sought to schedule a phone interview.

35. Oman, after attempting to schedule a phone interview, relayed to Plaintiff that Lacey would only do an in-person interview in Kansas City. In fear for her safety, Plaintiff declined the in-person interview which ended the application process.

36. In August 2018, Plaintiff was interviewed for a Passenger Engineer position in Pontiac, MI. After interviewing, Plaintiff learned that the position was going to Joel Meyers, Plaintiff's junior, and less-qualified male co-worker.

37. Plaintiff thereafter complained to her supervisors that she was being treated unfairly because of her gender, and that she was going to file a complaint with the EEOC.

38. After Plaintiff threatened to go to the EEOC, Defendant closed the job opening without filling the position. A few weeks later the position was posted again, and Plaintiff reapplied.

39. Shortly thereafter, the position was once again taken down and remains unfilled. This was done to ensure that Plaintiff would not receive the position.

40. In April 2019, Zak had a meeting with Plaintiff regarding an incident in which a train she was working on came in with bad brakes in need of repair. Zak fabricated a false story about how Plaintiff avoided the work of repairing the brakes. Other complaints about Plaintiff were also fabricated.

41. Plaintiff filed a complaint about Zak with her union alleging that Zak was discriminating against her and retaliating against her.

42. The union advised Zak and his supervisor, Jeremy Gaatz about the retaliation compliant. No action was taken by Defendant.

43. The retaliation against Plaintiff continued. In the spring of 2019, someone in the mechanical department, supervised by Dave Shank—a close friend of Zak, activated the power on a 480-volt cable while Plaintiff was working on a train, although safety protocols require that the power remain off while Plaintiff was performing her work. Contact with the cable could have been fatal.

44. The engineer working at the time warned Plaintiff that "someone must have a problem with you" because they activated the cable.

45. On another occasion, Plaintiff was warned by a mechanical foreman that she should "stand down" and stop complaining, "or else."

46. Plaintiff filed a charge with the EEOC charging Amtrak with discrimination based on sex on July 23, 2019.

47. Most recently, all conductor and assistant conductor positions were placed on "on-call" status due to the COVID-19 pandemic. In order for employees to regain a regularly scheduled position, they would have to bid on jobs, which would be awarded based on seniority.

48. Over the summer of 2020, Plaintiff bid on a regularly scheduled assistant conductor position in Port Huron, Michigan.

49. The assistant conductor position, again, went to a less-qualified junior, male employee.

50. Plaintiff requested access to a copy of personnel file from Defendant, in September 2019 and again in June 2020.

51. To date, Defendant has never produced Plaintiff's personnel file, nor responded to her requests in any way.

52. On September 2, 2020, Plaintiff received her Right to Sue Letter from the EEOC.

53. Since the filing of her EEOC charge Plaintiff has been placed in situations where she has been made to feel unsafe working around equipment, which appear to be designed to intimidate her.

## COUNT I
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964

54. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

55. At all relevant times, Plaintiff was an employee, and Defendant her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000(e), *et. seq*.

56. Plaintiff is a member of a protected class; she is a female.

57. Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of her sex.

9

58. Similarly situated male employees were treated better in the terms and conditions of their employment. Namely, they were promoted, and did not experience gender-based harassment or discriminatory acts.

59. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

60. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment was adversely affected and Plaintiff was unfairly denied access to the promotion because of her sex.

61. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
### Sex Discrimination in Violation of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2102 *et. seq.*

62. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

63. Pursuant to the Elliott-Larsen Civil Rights Act ("ELCRA"), Defendant is an employer covered by the Act. *See* M.C.L. 37.2201 *et. seq*.

64. Plaintiff's sex was a factor in Defendant's decision to treat Plaintiff less favorably with regard to the terms, conditions, and benefits of employment on the basis of sex.

65. The actions of Defendant, through its agents, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

66. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

### COUNT III
*Retaliation in Violation of Title VII of the Civil Rights Act of 1964*

67. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

68. At all material times Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

11

69. Plaintiff engaged in conduct protected under Title VII including, but not limited to, by opposing, threatening to report and reporting Defendant's unlawful employment practices, which violate Title VII.

70. Plaintiff's treatment by Defendant following her protected conduct was retaliatory and occurred, in part, because Plaintiff opposed, threatened to report, and reported Defendant's unlawful employment practices in violation of the anti-retaliation provisions of Title VII.

71. As a direct and proximate result of Defendant's unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

72. The actions of Defendant's employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

73. As a direct and proximate result of Defendant's violation of Plaintiff's rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

## COUNT IV
### *Retaliation in Violation of Michigan's Elliot-Larsen Civil Rights Act*

74. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

75. At all material times Plaintiff was an employee and Defendant was her employer, covered by and within the meaning of the Elliot-Larsen Civil Rights Act, MCL § 37.2101, *et seq.* (the "ELCRA").

76. Plaintiff engaged in conduct protected under the ELCRA including, but not limited to, by opposing, threatening to report, and reporting Defendant's unlawful employment practices, which violate the ELCRA.

77. Plaintiff's treatment by Defendant following her protected conduct was retaliatory and occurred, in part, because Plaintiff opposed, threatened to report, and reported Defendant's unlawful employment practices in violation of the anti-retaliation provisions of the ELCRA.

78. As a direct and proximate result of Defendant's unlawful conduct, as described above, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

79. The actions of Defendant's employees, agents, and representatives were willful, intentional, and in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

80. As a direct and proximate result of Defendant's violation of Plaintiff's

13

rights as alleged herein, she has suffered past and future loss of earnings and earning capacity; loss of the value of benefits; she has sustained mental and emotional distress, embarrassment, humiliation, mental anguish, and anxiety; damage to her good name and reputation; and loss of the ordinary pleasures of everyday life.

### COUNT V
*Harassment and Hostile Work Environment in Violation of Title VII*

81. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

82. At all relevant times, Plaintiff was an employee and Defendant was her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* ("Title VII").

83. During the course of Plaintiff's employment, Defendant, through its employees and agents, subjected Plaintiff to unwelcome comments, speech, conduct, and other actions of an offensive and sexual nature, and by their words and conduct, made Plaintiff's subjection to the same a term or condition of her employment.

84. Defendant's treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

85. Defendant's actions were based on Plaintiff's sex and/or gender.

86. Defendant's unwelcome comments and conduct were intentional and willful, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

87. As a direct and proximate result of Defendant's unlawful conduct described above, the terms, conditions and privileges of Plaintiff's employment were adversely affected.

88. As a further direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has sustained injuries and damages including but not limited to the loss of earnings and earning capacity; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; loss of personal and professional reputation; and loss of the ordinary pleasures of everyday life.

## COUNT VI
*Sexual Harassment/Hostile Work Environment in Violation of Elliott-Larsen Civil Rights Act*

89. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs.

90. At all times material hereto, Plaintiff was an employee and Defendant was employers covered by and within the meaning of the Elliot-Larsen Civil Rights Act, MCL 37.2101, *et seq.*

91. At all times material hereto, Plaintiff's co-workers and supervisors, including but not limited to Michael Amstutz, Jeremy Gaatz, Carey Lacey, Ethan Like, and Adam Williams were employees of and served as agents of Defendant.

92. During the course of her employment, Defendant, through it employees and agents, subjected Plaintiff to unwanted comments, speech, conduct, and other actions of an offensive and sexual nature, and by their words and conduct, made Plaintiff's subjection to the same a term or condition of her employment.

93. Defendant's treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

94. Defendant's actions were based on Plaintiff's sex and/or gender.

95. Defendant's unwelcome comments and contact were intentional and willful, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

95. As a direct and proximate result of Defendant's unlawful conduct described above, the terms, conditions and privileges of Plaintiff's employment were adversely affected.

96. As a further direct and proximate result of Defendant's unlawful conduct described above, Plaintiff has sustained injuries and damages including but not limited to the loss of earnings and earning capacity; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; loss

16

of personal and professional reputation; and loss of the ordinary pleasures of everyday life.

## COUNT VII
### *Violation of the Bullard-Plawecki Employee Right to Know Act, MCL 423.501, et. seq.*

97. Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

98. At all times material hereto, Plaintiff was an employee and Defendant was an employer covered by and within the meaning of the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et. seq.*

99. Defendant generated and maintained a personnel record on Plaintiff during the course of her employment with Defendant.

100. Plaintiff repeatedly requested, but was denied by Defendant access to a copy of her employment records.

101. To date, Defendant and its employees continue to willfully fail and/or refuse to comply with the Act and Plaintiff's demands for a complete copy of her personnel record.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Jacqulyn Wood demands judgment against Defendants as follows:

**A. LEGAL RELIEF**

1. Compensatory, economic, and noneconomic damages in whatever amount she is found to be entitled;

2. A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3. Exemplary damages in whatever amount she is found to be entitled;

4. Liquidated damages in whatever amount she is found to be entitled; and

5. Punitive damages in whatever amount she is found to be entitled; and

6. An award of interest, costs and reasonable attorney fees.

B. **DECLARATORY & EQUITABLE RELIEF**

1. An injunction out of this Court prohibiting any further acts of wrongdoing and placing Plaintiff into the position of Passenger Engineer;

2. An award of interest, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: December 1, 2020     **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emarzottotaylor@debgordonlaw.com

sthomas@debgordonlaw.com
msavage@debgordonlaw.com

## **JURY DEMAND**

Plaintiff Jacqulyn Wood, by her attorneys **Deborah Gordon Law**, demands a trial by jury of all the issues in this cause.

Dated:  December 1, 2020	**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emarzottotaylor@debgordonlaw.com
sthomas@debgordonlaw.com
msavage@debgordonlaw.com